UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

JOHNNIE ROGERS,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )       Case No. 06-CV-0313-CVE-PJC
                                         )
FEDERAL EXPRESS CORPORATION,             )
                                         )
            Defendant.                   )

OPINION AND ORDER

Now before the Court is Defendant's Motion for Summary Judgment (Dkt. # 34).  Defendant

Federal Express Corporation ("FedEx")  argues that it is entitled to summary judgment on plaintiff's

claims of religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and

racial discrimination under Title VII and 42 U.S.C. § 1981.[1]  FedEx assumes for the purposes of this

motion that plaintiff can make a prima facie case of discrimination, but FedEx claims that it had a

legitimate, non-discriminatory reason for terminating plaintiff's employment.  Plaintiff argues that

FedEx's explanation is simply pretext to disguise a discriminatory motive for its termination of

plaintiff.

I.

FedEx hired Johnnie Rogers ("Rogers"), an African-American, as a part-time package

handler at its RVS station in Tulsa, Oklahoma ("RVS station") in January 1994.  Rogers began

---

[1]    For purposes of plaintiff's racial discrimination claims, the same elements apply whether the
case is brought under Title VII or § 1981.  Drake v. City of Fort Collins, 927 F.2d 1156,
1162 (10th Cir. 1991).  As will be discussed, FedEx assumes that plaintiff can make a prima
facie case of racial and religious discrimination, and the parties make no distinction between
the different claims for purposes of FedEx's legitimate, nondiscriminatory reason for
terminating plaintiff's employment or plaintiff's assertion of pretext.  See infra, section III.

working as a full-time courier in October 1994, and he held that position for almost six years.  In March 2000, FedEx promoted Rogers to the position of operations manager at the RVS station.  As an operations manager, plaintiff reported to the senior manager for the RVS station, and he worked for five different senior managers during his employment at FedEx: Renee Mannon ("Mannon") (March 2000 to February 2001); Roy Young ("Young") (February 2001 to November 2001); William Ray ("Ray") (November 2001 to February 2002); Randall Luna ("Luna") (February 2002 to June 2003); and Dennis Schrieber ("Schrieber") (July 2003 to January 2005).

FedEx provided Rogers updated copies of its employee handbook throughout Rogers' employment, and the employee handbook contained guidelines for disciplinary action against employees.  Formal disciplinary action was broken down into four primary categories: documented verbal counseling; documented written counseling; performance reminder; and warning letter. Section 2-5 of the employee handbook states:

> Failure to correct behavioral deficiencies results in discharge by the Company. Three notifications of deficiency within a 12-month period normally result in termination.   However, an employee's entire employment history should be considered.  Based on the severity of the occurrence, an employee may be terminated with less than three notifications of deficiency within a 12-month period. Management is responsible for thoroughly reviewing an employee's disciplinary record with the Company and exercising judgment in determining appropriate action.

Dkt. # 34, Ex. 1, at 3.  For purposes of this section, a performance reminder or warning letter constitutes a "deficiency."  Id. Rogers was aware of section 2-5 and understood that his employment could be terminated if he received three deficiencies within 12 months.  FedEx provided a process, called the Guaranteed Fair Treatment Procedure/EEO Complaint procedure ("GFTP/EEO"), for employees to challenge disciplinary actions against them.  This procedure also permitted employees

to internally raise allegations of workplace discrimination before an employee filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

Rogers was formally and informally disciplined by his senior managers throughout his employment with FedEx.[2]  On July 6, 2000, Mannon verbally counselled Rogers for failing to turn in his "follow up" to his workgroup as required for all operations managers.  Mannon issued a performance reminder to Rogers on August 21, 2000, because Rogers overlooked 62 undelivered packages in one of his trucks.  FedEx suspended Rogers without pay on March 8, 2001 for violating its acceptable conduct policy.  Rogers failed to follow up with one of his employees that received a traffic ticket and, in addition to being suspended without pay, he also received a warning letter on March 12, 2001.

Rogers received a letter of expectation[3] from Luna on February 25, 2002, because employees under Rogers' supervision were exceeding their allotted hours of work.  Luna conducted a documented counseling with Rogers on March 20, 2002, because Rogers failed to timely note

---

[2]     FedEx describes Rogers' disciplinary record as "replete with discipline and notations from his various Senior Managers over the years for similar, repeated acts or omissions . . . ."  Dkt. # 34, at 3.  Plaintiff disputes FedEx's characterization of his record, because many of the actions noted by FedEx did not constitute formal discipline.  However, plaintiff does not dispute the substance of the individual allegations forming the basis for most of the notations in his record.  For purposes of ruling on FedEx's motion for summary judgment, plaintiff's disciplinary history is relevant to FedEx's legitimate, non-discriminatory reason for terminating plaintiff's employment and plaintiff's assertion of pretext, but the parties' characterization of Rogers' disciplinary record is irrelevant.

[3]     Plaintiff argues that a letter of expectation is not a form of discipline, but is simply "a letter to let an employee know what is expected of them."  Dkt. # 47, at 2.  While a letter of expectation may not constitute formal discipline under FedEx's employee handbook, it is part of plaintiff's employment history and provides evidence that plaintiff's job performance was unsatisfactory.

disciplinary infractions by his employees in FedEx's PRISM system ("PRISM").[4]  Rogers received

a letter of expectation on April 3, 2002 addressing his failure to monitor his subordinate employees'

attendance and punctuality.  Between April 4 and April 12, 2002, Rogers received four documented

counselings from Luna for (1) failing to meet deadlines and respond to Luna's e-mails about the

missed deadlines; (2) failing to ensure that his employees' frontline compliance was acceptable; (3)

neglecting to input PRISM data in a timely manner; and (4) poor overall performance as an

operations manager.  After further investigation, Luna issued a warning letter to Rogers on April 23,

2002 stating:

> On April 8, 2002 you were notified while on-road with route 644 Andy Permaul that
> a customer complaint had been initiated against Andy Permaul.  You indicated to a
> member of management that you would contact the customer and resolve the issue.
> On April 12, 2002 another member of management advised me that the customer had
> not heard from you regarding the complaint.  After contacting the customer, it
> became obvious that your lack of follow-up allowed a serious situation regarding one
> of our customers to remain in tact [sic].  A Security Investigation has resulted from
> this customer complaint and should have been initiated by you on the day you
> received the complaint. You need to be aware that further instances of this nature
> will not be tolerated and may lead to more severe disciplinary action, up to and
> including termination.

Dkt. # 34, Ex. 20.

In July 2002, Rogers received two documented counselings from Luna and several informal

e-mails concerning deficient job performance.[5]  Luna issued a documented counseling to Rogers on

---

[4]     Neither party specifically describes PRISM, but it appears that PRISM is an electronic
database utilized by FedEx to store information about its employees.  Supervisors were
responsible for inputting PRISM data, including disciplinary infractions by their employees,
by the 20th day of each month.

[5]     FedEx also states that Luna issued a performance expectation letter to Rogers on May 15,
2002. Dkt. # 34, Ex. 21.  However, this letter was sent to all operations managers at the RVS
station in Tulsa, and it does not identify any areas for improvement specific to Rogers.  This
letter does not appear to be any type of disciplinary action against Rogers.

July 22, 2002 for deficiencies with workgroup reporting, and Rogers also received a documented counseling on July 30, 2002 for failing to properly train his employees.  Luna sent Rogers several informal e-mails noting other areas of concern with Rogers' job performance.  The e-mails, although not formal disciplinary action by FedEx, show a growing concern with Rogers' performance.  On July 31, 2002, Luna told Rogers that he was "not taking things that [Luna was] assigning [Rogers] seriously" and that Rogers was not meeting Luna's expectations for an operations manager.  Id, Ex. # 25, at 1.  Matters escalated in August 2002, and Luna held a documented counseling with Rogers on August 1, 2002 for Rogers' failure to follow orders from the senior manager.  Luna suspended Rogers without pay on August 22, 2002 because Rogers failed to report an accident that damaged a FedEx truck.  Following an investigation, Luna found that Rogers acted properly and did not initiate any further disciplinary action based on this incident.[6]

Schrieber took over as senior manager at the RVS station in July 2003.  In January 2004, Schrieber asked Rogers to respond to a customer complaint, but Rogers directed the complaint to another operations manager.  Schrieber sent Rogers several e-mails to follow-up on this matter, but he elected not to take any disciplinary action against Rogers.  On February 27, 2004, Schrieber issued a performance reminder to Rogers, because Rogers failed to check an employee's disciplinary record before issuing a warning letter to the employee.[7]  The employee, Tony Williams ("Williams"), should have been terminated pursuant to FedEx policies, but Rogers issued a warning

---

[6]     If Luna had found that Rogers acted improperly by failing to report an accident, Rogers believes that Luna would have terminated his employment.  Id., Ex. 4, at 129-31.

[7]     Schrieber acknowledged that he had made a mistake as well, and he told Rogers that both of them should receive a performance reminder for their failure to terminate the employee. Schrieber's supervisor issued him a documented counseling rather than a performance reminder.

letter based on his understanding that Williams had not previously received a warning letter.  On

March 8, 2004, Rogers received a verbal counseling for his unprofessional handling of a customer

complaint and, also on March 8, Rogers received a written counseling for failing to send a truck to

an important  FedEx customer for a package pickup.

Rogers received another performance reminder from Schrieber on April 5, 2004, and he was

ordered by Schrieber to take a "decision day" to consider ways to improve his performance.

Schrieber felt that Rogers' job performance showed a lack of commitment, and he stated:

> During the past 8 months that I have been here at RVSA, I have had multiple
> discussions with you in regards to following up in a timely fashion to customer
> concerns, and to be "engaged" in the day-to-day operation.  While I realize that at
> least 3 of these discussions were verbal, it does not relinquish the fact that you have
> been advised that you need to make some major changes to your managerial skills
> and your commitment to the RVSA Team.  Most recently you were sent an email
> notification on March 28th that a customer complaint was called in regarding an
> indirect delivery by one of your couriers.  On Tuesday, March 30th you were sent
> a second request to call the customer, and then again on Wednesday March 31
> another request was sent asking you to once again respond to the customer.  Johnnie,
> this type of commitment to our customer is not what we stand for, and unfortunately
> this is not the first time that have discussed your failure to follow up in a timely
> fashion with requests.

Id., Ex. # 43, at 1.  Schrieber reviewed Rogers' previous disciplinary history and noted that he was

not the first senior manager to raise many of the same issues.  Rogers was ordered to take the next

day off to come up with a plan to improve his job performance.  Schrieber also reminded Rogers that

one more performance reminder within the applicable 12 month period could lead to Rogers'

termination.  Rogers challenged Schrieber's decision to issue a performance reminder through the

GFTP/EEO process, but Schrieber's decision was upheld.  At no time during this process did Rogers

allege that he was the victim of racial or religious discrimination.

Rogers received a documented counseling on May 6, 2004 because his team failed to meet its goal for the morning sort, but Rogers notes that each operations manager at the RVS station received a similar letter.[8]  On November 28, 2004, Schrieber issued a documented counseling to Rogers for his continued failure to input PRISM data by the 20th day of the month.  Schrieber had previously addressed this issue with Rogers informally and with a letter of expectation, but Rogers was still not entering this information in a timely fashion.

On January 28, 2005, Schrieber issued another performance reminder to Rogers for poor overall performance.  This was Rogers' third performance reminder within 12 months (February 27, 2004, April 5, 2004, January 28, 2005) and Schrieber terminated Rogers' employment with FedEx.[9]  Schrieber noted Rogers' unwillingness to handle pickups and deliveries for an important seasonal shipper.  Rogers did not feel that the customer was his responsibility and he delegated the matter to another employee.  Rogers also improperly coded four packages and did not follow proper procedures to see that the packages were delivered.  In addition, Schrieber noted that Rogers refused to provide him copies of documents that Schrieber requested and that Rogers failed to issue a written counseling to a subordinate employee as requested by Schrieber.  Rogers contested his termination through the GFTP/EEO process.  At the first level of review, the managing director for the Dallas

---

[8]  On October 7, 2004, Schrieber also issued a verbal counseling to each operations manager for accessing personal information of other employees.  FedEx has not produced any evidence that this verbal counseling was directed at Rogers and Rogers denies that he viewed any confidential information belonging to other employees.  Consequently, the Court will not consider this verbal counseling as any evidence of misconduct by Rogers.

[9]  It appears that plaintiff was not at work for several days before he was officially terminated because, on January 25, 2005, about 75 FedEx employees sent a letter to Schrieber implying that Rogers had already been fired.  The letter stated that employees at the RVS station were "sadden [sic] and troubled" by Schrieber's decision to fire Rogers, and they petitioned upper management to reinstate Rogers.  Dkt. # 47, Ex. 10.

Metro District found "extensive documentation of [Rogers'] problems with failure to provide customer service" and he noted that Rogers failed to correct his performance deficiencies after numerous warnings.  Dkt. # 34, Ex. 56, at 1.  After a total of three levels of review, the decision to terminate Rogers' employment was upheld.  Rogers did not allege that Schrieber initiated his termination due to any type of discrimination.

On August 2, 2005, Rogers filed a charge with the Oklahoma Human Rights Commission alleging that FedEx terminated his employment based on racial and religious discrimination.  Rogers alleged that Schrieber made disparaging remarks about his religion, specifically the Rhema Bible Church.  According to Rogers, Schrieber said that "he had never seen a good RHEMA worker."  Id., Ex. 63.  Rogers was offended that Schrieber referred to a co-worker as a "bionic redneck" and he alleged that Schrieber told racial jokes about a "Black person's burial."  Id.  The charge contains allegations that Schrieber fired a female black operations manager, Katrina Cromartie ("Cromartie"), but he did not fire similarly situated white employees for similar disciplinary infractions.  Rogers felt that Schrieber abused his discretion to write up Rogers for minor infractions and scrutinized his work more closely than other employees to find a reason to terminate Rogers.  The EEOC investigated Rogers' allegations and dismissed the charge.  The evidence showed that Rogers was terminated as a "result of [Rogers] not performing [his] job to the Respondent's expectations . . . after counseling to improve [Rogers'] performance failed."  Id., Ex. 64, at 1.  Although Rogers believed he was satisfactorily performing his job, the EEOC relied on evidence dating back to July 2000 to support its conclusion that Rogers had been repeatedly warned about his poor job performance.

Rogers disputes FedEx's assertion that it terminated him solely because of his allegedly unsatisfactory job performance. Rogers states that he received at least 20 Bravo Zulu awards during the course of his employment and these awards are the highest honor that can be given to an operations manager. Rogers received Bravo Zulu awards for the increased productivity of his staff, his leadership abilities, and services to FedEx beyond the scope of his employment duties. FedEx disputes the relevance of plaintiff's Bravo Zulu awards, because the awards do not negate the legitimate, nondiscriminatory basis for his termination. FedEx also states that Bravo Zulu awards are not the highest awards that can be received by an operations manager.

Rogers claims that Schrieber ignored Rogers' entire employment record when he decided to terminate Rogers, and FedEx policies required Schrieber to consider termination as an option in light of Rogers' entire employment history. According to Rogers, Schrieber's decision to terminate Rogers was based on a discriminatory motive, because Schrieber failed to terminate other similarly situated white employees. Rogers claims that another black operations manager, Cromartie, was targeted for termination by Schrieber and fired for trivial violations of FedEx's disciplinary policies. Cromartie was fired because she (1) falsified time cards; (2) falsified road test results; (3) failed to report vehicle accidents; (4) improperly viewed the personal information of other employees; and (5) contacted hourly employees while on suspension. Id., Ex. 21, at 1. Cromartie appealed her termination through the GFTP/EEO process, and alleged that Schrieber terminated her employment because of her race.[10]

---

[10]   The parties have not provided any evidence concerning FedEx's findings during the review process, and the Court has no basis to determine if Cromartie's allegations of racial discrimination were substantiated.

Rogers alleges that Schrieber disciplined white employees less harshly, and he compares his termination to the disciplinary action received by Michael Beckmann ("Beckmann"), Jeff Weiszbrod ("Weiszbrod"), Tracie Darnell ("Darnell"), Rick Gonzalez ("Gonzalez"), and Michael Coon ("Coon").[11] Plaintiff relies on several memoranda prepared by employees working under Schrieber when he was the senior manager at FedEx's Oklahoma City station. These memoranda are critical of Schrieber's management style. For example, Steve Cruse noticed a "negative change in the attitudes of the hourly employees and the overall atmosphere of the station." Dkt. # 47, Ex. 13, at 1. Steven Jacks noted several incidents when Schrieber did not permit employees to take personal time for injuries or family crises, and he believed that the "morale of the station ha[d] declined dramatically." Id., Ex. 14, at 1. Johnnie Spears and Curt Johnson made similar allegations, and they stated that Schrieber appeared to favor certain employees over others. Id., Exs. 15 and 16. However, none of the memoranda cited by plaintiff includes any allegations that Schrieber discriminated against subordinate employees because of race or religion.

FedEx does not dispute that Schrieber received a warning letter and demotion on June 3, 2002, for engaging in "threatening and intimidating behavior with managers and employees" while he worked at the Oklahoma City station. Id., Ex. 17, at 1. As a demotion, FedEx transferred Schrieber from the Oklahoma City station to a smaller station near Dallas, Texas. This transfer caused Schrieber's pay grade to drop from 28 to 27 and, even though still occupied the position of senior manager, he received a pay cut from FedEx. FedEx argues that Schrieber's disciplinary

---

[11]     FedEx disputes Rogers's allegations that these employees are similarly situated to him. This requires a factual and legal determination concerning the relevance of this evidence to Rogers' employment discrimination claims, and the specifics of the discipline received by each employee will be discussed in detail. See infra, section III(C).

history contains no evidence that he engaged in racial or religious discrimination against other employees and, therefore, Schrieber's disciplinary record is irrelevant.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law." Id. at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

## III.

FedEx argues that it had a legitimate nondiscriminatory reason to terminate plaintiff's employment and plaintiff can not carry his burden to show that FedEx's stated reason was pretextual.   Plaintiff claims that FedEx violated its internal policies by firing him without considering his complete employment history.   He also argues that FedEx's legitimate, nondiscriminatory reason for firing him was pretextual, primarily because other similarly situated employees were disciplined less harshly.

## A.

Title VII prohibits an employer from intentionally discriminating against its employees on the basis of race, color, religion, sex or national origin.  42 U.S.C. § 2000e-2.  "A plaintiff alleging discrimination on the basis of race may prove intentional discrimination through either direct evidence of discrimination . . . or indirect or indirect (i.e. circumstantial) evidence of discrimination."  Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000). To prove a claim of intentional discrimination based on circumstantial evidence, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment consequence even though he was performing his job satisfactorily; and (4) plaintiff's position was not eliminated after his termination.  Perry v. Woodward, 199 F.3d 1126, 1183 (10th Cir. 1999).  If the plaintiff can establish a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse

employment action.  Jaramillo v. Colorado Judicial Dep't, 427 F.3d 1303, 1307 (10th Cir. 2005).

Once the defendant comes forward with a legitimate, nondiscriminatory reason for its decision, the

burden shifts back to the plaintiff to prove by a preponderance of the evidence that the defendant's

reason is pretextual.  Id.

FedEx assumes for the purposes of its motion for summary judgment that plaintiff can

establish a prima facie case of racial and religious discrimination under Title VII.  Therefore, the

Court will assume without deciding that plaintiff can do so, and the Court will move to the next step

of the analysis, specifically FedEx's legitimate, nondiscriminatory reason for terminating plaintiff's

employment.

## B.

Defendant has the burden to "articulate some legitimate, nondiscriminatory reason" for

plaintiff's termination.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973).  "The

defendant's burden is merely to articulate through some proof a facially nondiscriminatory reason

for the termination; the defendant does not at this stage of the proceeding need to litigate the merits

of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need

prove that the reasoning was applied in a nondiscriminatory fashion."  EEOC v. Flasher Co., Inc.,

986 F.2d 1312, 1316 (10th Cir. 1992).  The Tenth Circuit has described the defendant's burden at

this stage of the proceedings as "exceedingly light."  Zamora v. Elite Logistics, Inc., 478 F.3d 1160,

1165 (10th Cir. 2007).

FedEx has provided evidence that plaintiff was not satisfactorily performing his job and

states that it relied on FedEx disciplinary policies as a basis for plaintiff's termination.  It is

undisputed that plaintiff received three performance reminders within 12 months and that Schrieber

had an adequate justification to give each performance reminder.  Under section 2-5 of the employee handbook, FedEx would "normally" fire any employee that received three performance reminders within 12 months.  Dkt. # 34, Ex. 1, at 1.  The Tenth Circuit has stated that "[p]oor performance is a quintessentially legitimate and nondiscriminatory reason for termination."  Bryant v. Farmers Ins. Exchange, 432 F.3d 1114, 1125 (10th Cir. 2005).  Plaintiff argues that FedEx failed to consider Rogers' entire employment history and the severity of his disciplinary infractions.  He claims that other employees received lesser disciplinary sanctions for similar misconduct, but he does not dispute the accuracy of the facts stated in each performance reminder.  FedEx has satisfied its burden to articulate through some proof a legitimate, nondiscriminatory reason for terminating plaintiff's employment, and the Court will next consider whether FedEx's stated reason is pretextual.

## C.

At this stage of the proceeding, the burden shifts to plaintiff to show that there is a genuine issue of material fact that defendant's explanation for terminating plaintiff's employment is pretextual.  Plotke v. White, 405 F.3d 1092 (10th Cir. 2005); Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004).  "A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence."  Stinnett v. Safeway, Inc., 337 F.3d 1213, 1218 (10th Cir. 2003) (quoting Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994)).  A plaintiff typically attempts to satisfy his burden by "revealing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'"  Mackenzie v. City & County of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005) (quoting Morgan v. Hilti, Inc.,

14

108 F.3d 1319, 1323 (10th Cir. 1997)).   A plaintiff's "mere conjecture" that the employer's explanation is pretext is not a sufficient basis to deny a motion for summary judgment.  <u>Branson v. Price River Coal Co.</u>, 853 F.2d 786, 772 (10th Cir. 1988).

In this case, plaintiff argues the FedEx's reliance on section 2-5 of the employee handbook as a basis for plaintiff's termination is pretextual, because Rogers was treated differently from similarly situated non African-American employees under FedEx's disciplinary policy.  The Tenth Circuit has recognized that a plaintiff may establish pretext by showing that "the employer 'treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness' in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff."  <u>Swackhammer v. Sprint/United Management Co.</u>, 493 F.3d 1160, 1168 (10th Cir. 2007).   An employee is similarly situated if the employee "deals with the same supervisor and is subject to the 'same standards governing performance evaluation and discipline."  <u>Kendrick</u>, 220 F.3d at 1232.   Plaintiff has the burden to produce evidence that employees are similarly situated.  <u>Riggs v. AirTran Airways, Inc.</u>, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007).

Under the framework provided by the Tenth Circuit, plaintiff must produce evidence that managerial employees subject to the same disciplinary standards as plaintiff were given more favorable treatment by Schrieber.  As the Court has noted above, plaintiff cites Beckmann, Weiszbrod, Darnell, Gonzalez, and Coon as similarly situated employees who were not disciplined as harshly as plaintiff for similar types of conduct.  However, it is apparent that Beckmann and Gonzalez are not similarly situated.  The Court may not treat Beckmann as a similarly situated employee, because he was not a manager.  Beckmann was employed as a courier and plaintiff

occupied a managerial position.  See Vasquez v. County of Los Angeles, 349 F.3d 634 (9th Cir. 2003) ("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees.").  In addition, FedEx has produced evidence showing that Chance, not Schrieber, was responsible for disciplining Beckmann, and there is no basis to treat plaintiff and Beckmann as similarly situated employees.  Plaintiff also references Gonzalez as a similarly situated employee, because he worked under the same managing director, Teri Reeves ("Reeves").  Gonzalez was an operations manager at a FedEx facility in Texas, and he worked under senior manager Andy Matchus.  Plaintiff acknowledges that Gonzalez did not work at the RVS station in Tulsa and that Gonzalez worked for a different senior manager.  He has not presented any evidence that Reeves had a direct part in disciplinary decisions concerning plaintiff or Gonzalez and, therefore, Gonzalez is not similarly situated to plaintiff.  Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1120 n.11 (10th Cir. 2007) (affirming application of same supervisor rule when an employee is not alleging company-wide discrimination); Green v. New Mexico, 420 F.3d 1189, 1195 (10th Cir. 2005) (employees with different supervisors are not similarly situated for purposes of pretext analysis).

Weiszbrod was a white operations manager at the RVS station in Tulsa, and plaintiff claims that he engaged in more severe misconduct than plaintiff without receiving any punishment. Plaintiff asserts that Weiszbrod engaged in unprofessional conduct while at a manager's meeting at Lake Texoma.  Specifically, plaintiff alleges that Weiszbrod called in sick for a required meeting, showed up late to another meeting with a hangover, and received a speeding ticket.  However, it is not clear how Weiszbrod's alleged misconduct is relevant to plaintiff's claims of racial and religious discrimination.  Plaintiff has not alleged that he was disciplined for similar types of conduct and Weiszbrod's actions do not show that Schrieber failed to discipline an employee outside the

16

protected class for conduct of "comparable seriousness." <u>Swackhammer</u>, 493 F.3d at 1171 n.11;

<u>McGowan v. City of Eufala</u>, 472 F.3d 736, 745 (10th Cir. 2006).  At this stage of the proceedings,

plaintiff bears the burden to produce evidence that FedEx considered Weiszbrod's and plaintiff's

actions in a similar light under FedEx's workplace rules.  <u>Riggs</u>, 497 F.3d at 1121.  Without this

nexus, there is no basis for the Court to find that the discipline received by plaintiff and the lack of

discipline for Weiszbrod is evidence of pretext.

Plaintiff asserts that Darnell, a white operations manager, was issued a warning letter for

accessing the personal files of other employees, but Schrieber delayed entering the warning letter

until Darnell was transferred to another facility.  It is not disputed that Darnell received a warning

letter for improperly accessing personal information of other employees, and it also clear that

Schrieber issued warning letters to Coon and Cromartie for the same type of conduct. Dkt. # 47, Ex.

4, at 249.  Plaintiff has not produced any evidence that he requested Schrieber to withhold discipline

to permit him to transfer to another station or that plaintiff received harsher discipline for the same

conduct.  In fact, Schrieber's treatment of Darnell, Coon and Cromartie shows that he consistently

issued warning letters for the same type of conduct regardless of an employee's race.  Schrieber's

treatment of Darnell does not support plaintiff's argument that similarly situated non African-

American employees were treated differently.

Plaintiff primarily relies on Schrieber's treatment of Coon, a white operations manager at

the RVS station in Tulsa, to show that Schrieber did not terminate white employees who received

three performance reminders or warning letters.  Plaintiff provides an extensive list of Coon's

alleged disciplinary infractions and he claims that Schrieber intentionally overlooked much of

Coon's conduct to avoid giving Coon performance reminders or warning letters.  Plaintiff alleges

that Schrieber documented Coon's failure to meet deadlines on December 3, 2004, February 21, 2005, April 7, 2005, June 2, 2005, September 23, 2005, and November 14, 2005, but Schrieber did not take any disciplinary action against Coon.  Based on the evidence submitted by plaintiff, Coon received nine documented counselings from December 8, 2004 to August 7, 2006.  The evidence also shows that Coon received warning letters or performance reminders on May 25, 2004, September 6, 2004, November 25, 2005, July 19, 2006 and October 19, 2006.  FedEx, through senior manager Wendell Parker, terminated Coon's employment on October 19, 2006, because Coon received three performance reminders or warning letters within 12 months.

Plaintiff has presented evidence that Coon had the same supervisor, worked at the same location, and had an extensive list of disciplinary infractions.  However, plaintiff must still show that FedEx failed to terminate Coon for conduct of comparable seriousness.  Riggs, 497 F.3d at 1121; Swackhammer, 493 F.3d at 1171 n.11; McGowan, 472 F.3d at 745; Kendrick, 220 F.3d at 1230. Plaintiff claims that Coon received a written counseling on December 8, 2004 for failing to check an employee's driving record, but plaintiff was issued a performance reminder on February 27, 2004 when he failed to terminate an employee, Williams, based on Williams' disciplinary record. Schrieber noted that the Coon's error occurred in 2002 and the employee's driving record on file with FedEx would not have shown Coon that the employee's license had been suspended.  He felt that these exceptional circumstances justified an exception to his usual rule of issuing a performance reminder for this type of violation.  When considering Coon's entire employment record, it is apparent that Coon previously received a warning letter on May 25, 2004, because he failed to follow the proper procedures when evaluating his subordinate employees.  The conduct described in Coon's December 8, 2004 documented counseling is distinguishable from the performance

18

reminder plaintiff received on February 27, 2004, because the employee's motor vehicle record on file with FedEx did not actually show Coon that the employee's license had been suspended.  In contrast, plaintiff could have found the necessary information in FedEx's PRISM system when deciding how to discipline Williams.  Schrieber's decision to issue a documented counseling to Coon on December 8, 2004 does not show that he treated plaintiff more harshly than Coon, because FedEx has shown that the incidents are distinguishable.

Schrieber's discipline of Coon focused on Coon's failure to meet deadlines or follow procedures, while plaintiff received two of his three performance reminders for ignoring orders from Schrieber to respond to customers.  When Coon and plaintiff engaged in similar conduct, such as failing to thoroughly review an employee's file or missing a deadline, they received the same type of discipline.  When plaintiff missed deadlines or failed to follow up as requested by management, the evidence shows that he received informal or lesser discipline in a manner similar to FedEx's treatment of Coon.  Plaintiff delegated customer complaints, pickups, and deliveries to other employees when specifically requested by Schrieber to do so personally, or failed to respond to customer concerns in a timely manner.  During the GFTP/EEO review of plaintiff's termination, FedEx noted that plaintiff's poor customer service was the primary reason for his termination.  See Dkt. # 34, Ex. 56, at 1 ("There is extensive documentation of your problems with failure to provide customer service . . . ."); Id., Ex. 58, at 1 (plaintiff's failure to take "the most basic of efforts" to deliver four packages and missing pick-up times for customers justified plaintiff's termination).  Based on a careful review of the evidence, it is clear that FedEx viewed plaintiff's poor customer service more seriously than Coon's failure to follow internal FedEx procedures.  Therefore, this does

not show that plaintiff was disciplined more harshly than Coon for conduct of comparable seriousness.

Plaintiff argues that Schrieber had a history of disciplining African-American employees more harshly, because Schrieber previously terminated Cromartie, an African-American operations manager.   The parties do not dispute that Cromartie was terminated for falsifying time cards, falsifying road test results, failing to report vehicle accidents, and improperly accessing the personnel files of other employees, and that Cromartie alleged that Schrieber terminated her due to her race.   However, the evidence before the Court is incomplete and does not permit the Court to draw an inference that Schrieber terminated Cromartie's employment because of her race.   The parties have submitted Cromartie's termination letter and her appeal of Schrieber's decision to terminate her employment.   However, the Court has no evidence showing Cromartie's prior disciplinary history or FedEx's findings during the GFTP/EEO process, and the Court would be speculating if it inferred  that Schrieber terminated Cromartie's employment for any reasons other than those stated in her termination letter.   The allegations against Cromartie were serious and justified Cromartie's termination under FedEx's disciplinary procedures.   Cromartie's allegations of racial discrimination, without more, are not sufficient for the Court to draw an inference that she was terminated because of her race.

Plaintiff makes several unsupported statements that FedEx transferred Schrieber to different stations because of Schrieber's discriminatory treatment of African-Americans.   While FedEx disciplined Schrieber for his harsh managerial style and perceived flaws with his leadership skills, there is no documentation showing that FedEx found any evidence that Schrieber's actions were discriminatory.   It is clear that subordinate employees disliked Schrieber's managerial style, but

plaintiff has not produced any evidence that subordinate employees believed Schrieber's actions were motivated by racial or religious discrimination.  Although plaintiff correctly notes that Schrieber was disciplined by his superiors, this is not evidence that Schrieber engaged in racial or religious discrimination and Schrieber's disciplinary record is irrelevant to plaintiff's employment discrimination claims.

Even if the Court were to find small variations in Schrieber's treatment of plaintiff and other employees, the existence of minor inconsistencies is not evidence of racial discrimination.  See Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual.").  As the Tenth Circuit has noted:

> Human relationships are inherently complex.  Large employers must deal with a multitude of employment decisions, involving different employees, different supervisors, different time periods, and an incredible array of facts that will inevitably differ among seemingly similar situations.  The law does not require, nor could it ever realistically require, employers to treat all their employees all of the time in all matters with absolute, antiseptic, hindsight equality.

Flasher, 986 F.2d at 1319.  In this case, FedEx has provided a legitimate, nondiscriminatory reason for terminating plaintiff's employment and, based on plaintiff's employment history and FedEx disciplinary polices, FedEx was justified in terminating plaintiff's employment.  Plaintiff has not satisfied his burden to produce evidence to show that FedEx's stated reason for his termination is pretextual.  Although plaintiff asks the Court to consider discipline issued to other employees as evidence of pretext, plaintiff has not shown that these employees were similarly situated to plaintiff or engaged in conduct of comparable seriousness.  In fact, the evidence shows that Schrieber treated his subordinate employees consistently for similar types of disciplinary violations, and there is no

21

indication that Schrieber disciplined African-American employees more harshly than other employees.  Construing the facts in favor of plaintiff, he has not shown that any genuine issue of material fact exists that would permit the Court to infer that FedEx's legitimate, nondiscriminatory basis for terminating his employment is pretextual.

**IV.**

Based on a review of the summary judgment record, FedEx has articulate through proof a legitimate, nondiscriminatory reason for terminating plaintiff's employment, and plaintiff has not shown that FedEx's stated reason was pretext for a discriminatory motivation.  The evidence shows that plaintiff was repeatedly disciplined by all of his senior managers throughout his employment at FedEx, and that he had come close to receiving three deficiencies in 12 months at least once before prior to his termination on January 28, 2005.  Plaintiff argues that similarly situated employees outside of the protected class were treated differently, but a careful review of the evidence shows otherwise.  The Court finds that plaintiff has not satisfied his burden under McDonnell Douglas, and FedEx is entitled to summary judgment on plaintiff's claims of racial and religious discrimination.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Dkt. # 34) is **granted**.  A separate judgment is entered herewith.

**DATED** this 9th day of November, 2007.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT